**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Kier Shawn Johnson, Jr.,<br><br>　　　　Defendant. | Case No. 25-cr-157 (MJD/DTS)<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Defendant Kier Shawn Johnson, Jr., is charged with one count of possession of ammunition as a felon and one count of possession of a firearm as a felon. He moves to suppress all evidence seized at a Columbia Heights apartment, arguing law enforcement seized it in violation of the Fourth Amendment. The thrust of his argument is that the supporting affidavit failed to establish a fair likelihood that evidence of Johnson's illegal possession of a firearm would be found at the apartment. Because the supporting affidavit at most places Johnson physically at the apartment on one occasion, the Court recommends Johnson's motion be granted and the evidence be suppressed.

## FACTS

On February 5, 2025, St. Paul Police Officer Timothy James Moore applied for a warrant to search an apartment located at 3940 Peter's Place in Columbia Heights Minnesota. Ex. 1 at 2 (Search Warrant). The application sought permission to search the apartment for firearms and evidence related to firearms, evidence of occupancy, and specific clothing believed to belong to Johnson. *Id.* In support of the application, Officer

Moore submitted an affidavit "establishing the grounds for issuance of a search warrant." *Id.* at 3–5. The relevant facts are detailed below.

On June 10, 2024, St. Paul officers were dispatched to the intersection of Albemarle Street and Front Avenue on a report of 16 gunshots. *Id.* at 3. Surveillance footage and a cell phone video caught an individual leaving the scene with a firearm. *Id.* After a lengthy investigation, officers identified the individual as Johnson. *Id.* at 3–4. On December 31, 2024, officers responded to a call for shots fired at the northwest corner of Cook Avenue and Arundel Street. *Id.* at 4. After canvassing the area, officers retrieved video footage of Johnson firing a handgun at the scene. *Id.* at 5 ("The male firing the handgun is wearing the same jeans as Johnson . . . . [and] also appears to have the same shoes as Johnson and is similar in both size and complexion.").[1] Johnson, the affidavit notes, was ineligible to possess firearms due to prior felony convictions. *Id.* at 4. On January 28, 2025, Johnson was charged with drive by shooting in state court. *Id.* at 5.

One day earlier, on January 27, 2025, a probation officer observed Johnson riding in a vehicle with the Minnesota License Plate #KAS154. *Id.* at 5. The vehicle's registered owner was Shaneka Nichol Williams. *Id.* Officer Moore observed Johnson's Facebook account "to be connected as friends and communicate with" Williams's Facebook account. *Id.* Officer Moore "knows . . . Williams . . . to live at 3940 Peters Place #204 in Columbia Heights." *Id.* Williams' vehicle had been observed in the parking lot at 3940 Peters Place several times, including on February 4 and 5, 2025.

---

[1] This factual summary omits considerable detail of Officer Moore's investigation because the sufficiency of the facts linking Johnson to those earlier shootings is not in dispute.

Officers obtained a search warrant to monitor the internet connection for Johnson's Facebook account. On February 3, 2025, Johnson's account was accessed "through the internet subscriber . . . Williams at 3940 Peters Place Apartment 204" at 7:30:23 GMT. *Id.* Based on this information, Officer Moore believed "Johnson is associated with this apartment [and that the apartment] could hold property of Johnson to include evidence of the incidents on 6/10/2024 and 12/31/2024." *Id.*

An Anoka County district court judge issued the search warrant on February 5, 2025. *Id.* at 9. Officer Moore executed the warrant the same afternoon, seizing a Glock pistol, ammunition, and two pairs of jeans. *Id.* at 1. According to Johnson, "[t]he Glock firearm found in the search is the only evidence supporting Count 2 of the Indictment." Def.'s Mem. in Supp. 2, Dkt. No. 23.

**ANALYSIS**

**I.     Legal Standard**

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that law enforcement may only obtain a warrant "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. To establish probable cause, an affidavit in a warrant application must set forth "sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (*quoting United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). That is, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Perry*, 531 F.3d 662, 665

3

(8th Cir. 2008) (quoting *United States v. Tellez,* 217 F.3d 547, 550 (8th Cir. 2000)). A judge issuing a warrant may "draw reasonable inferences from the totality of the circumstances" to determine whether probable cause exists. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (*quoting United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)).

Reviewing courts must afford "great deference" to the probable cause determination of the judge who issued the warrant, and the reviewing inquiry is limited "to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010). So long as the issuing judge had a "substantial basis" to conclude the "search would uncover evidence of wrongdoing," this Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999) (*quoting Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

## II. Probable Cause

Johnson does not appear to dispute the following: (1) the supporting affidavit states Johnson was ineligible to possess a firearm; (2) the affidavit adequately establishes Johnson had possessed a firearm at the time of the June and December 2024 incidents; and (3) the affidavit allows for the reasonable inference that Johnson continued to possess a firearm in early February 2025. *See* Def.'s Mem. in Supp. 4–5. Rather, Johnson contends the affidavit fails to establish a nexus between his alleged illegal possession of a firearm and the Columbia Heights apartment. *Id.* at 4. The Government disagrees, contending "the warrant application establishes that the defendant was spending time at the Peters Place apartment." Gov.'s Resp. 6, Dkt. No. 28. Because, according to the

4

Government, people ordinarily keep firearms somewhere readily accessible to them, there was probable cause to search the apartment for Johnson's firearms and firearms accessories. The fighting issue, then, is whether the facts in the affidavit adequately link Johnson to the apartment.

The Government claims three facts in the affidavit connect Johnson to the apartment. These facts and the reasonable inferences which can be drawn from them are described below:

Fact #1: Officer Moore "observed [Johnson's Facebook] account to be connected as friends and communicate with [Williams's Facebook] account." Search Warrant 5. From this fact it is reasonable to infer that Johnson and Williams were acquaintances. Nothing more. A friend on Facebook can be practically anyone. That Johnson and Williams "communicate[d]" on Facebook is slightly more substantive, but only barely. The affidavit offers no detail regarding the content or frequency of these communications. In short, this fact provides little insight into Johnson and Williams's relationship or Johnson's connection to the Columbia Heights apartment.

Fact #2: A probation officer observed Johnson riding in Williams's vehicle on January 27, 2025. Search Warrant 5. Relatedly, the vehicle was seen in the apartment's parking lot several times after November 2024, including February 4 and 5, 2025. *Id.* Although not specified in the affidavit, it is reasonable to infer that Williams was driving her vehicle. From there, it is reasonable to infer that Johnson and Williams were friends; people are more likely to give rides to friends than strangers or casual acquaintances. But this fact does not connect Johnson to the apartment. Johnson was only seen riding Williams's vehicle once. The affidavit does not state, for example, that Johnson was seen

leaving from or arriving at the apartment in Williams's vehicle. Nor does the affidavit provide some non-speculative basis to connect the sightings of *Williams's* vehicle at *her* apartment with *Johnson's* presence at the apartment. The affidavit lacks facts, for example, suggesting Johnson was borrowing Williams's car or regularly rode in it.

Fact #3: On February 3, 2025, Johnson's Facebook account was accessed through Williams's internet subscription at 7:30:23 GMT. Search Warrant 5. From this fact it is reasonable to infer Johnson accessed his Facebook account from within Williams's apartment on February 3, 2025. Although a third party could have accessed Johnson's Facebook account, the more plausible inference—and certainly a reasonable one—is that the account holder accessed his account on February 3. Similarly, Johnson could have accessed Williams's internet from outside her Columbia Heights apartment (for example, from a different apartment in the same building or from the parking lot). But the ordinary expectation—and certainly a reasonable inference—is that Williams's private internet was accessed by an authorized user from inside her apartment. Therefore, this fact links Johnson physically to the apartment at 1:30 A.M. on February 3, 2025.[2]

In summary, the affidavit establishes that (1) Williams and Johnson were friends; (2) Williams gave Johnson a ride on January 27; and (3) Johnson was physically present at Williams's apartment at 1:30 A.M. on February 3. When viewing these facts together, it is reasonable to infer Johnson was present at Williams's apartment for some length of time during the morning of February 3, perhaps stretching back into the evening of

---

[2] The Court takes judicial notice that GMT, or Greenwich Mean Time, was six hours ahead of central time on February 3, 2025. *See United States v. Moreno Coronado*, No. 16-cr-3076, 2019 WL 208070, at *2 n.2 (D.N.M. Jan. 15, 2019) (taking judicial notice of the conversion from GMT to mountain time)

February 2. While it is possible that Johnson and Williams had spent time together at times not documented in the affidavit, the dearth of information in the affidavit would make drawing any further inferences about the nature of their relationship and whether, where and when they spent time together (if at all), purely speculative. In other words, it is not reasonable to infer that Johnson regularly spent time at the Columbia Heights apartment or had even been to the apartment before February 3, 2025.

In deciding whether these facts provide a sufficient nexus to the Columbia Heights apartment, two cases are instructive. In *United States v. Malone*, a court in this District found there was probable cause that evidence of a defendant's illegal possession of a firearm would be found in his mother's apartment. No. 21-cr-217, 2022 WL 2056473 (D. Minn. Mar. 14, 2022), *R. & R. adopted by* 2022 WL 1486396 (D. Minn. May 11, 2022). The court reasoned that the following information adequately linked the defendant to that apartment:

> Defendant listed his mother as an emergency contact, whose address was listed as [XXXX] West 32nd Street, Apartment [XXX]. In addition, the victim in the September 19, 2021 domestic assault incident stated that Defendant stayed with "random friends or *with his mother*." (Hr'g Ex. 1) (emphasis added). Defendant also allegedly threatened his mother's boyfriend in a call for service to the West 32nd Street address. Cell phone data further suggested that Defendant spent most nights in the Uptown neighborhood. And on September 20, 2021, two days before the search warrant was signed, ATF personnel located the gray 2011 Hyundai Sonata parked near the apartment where they observed Defendant walk from the building at [XXXX] West 32nd Street to the 2011 Hyundai Sonata and drive away.

*Id.* at *5. By contrast, in *United States v. Rios-Uscanga*, a court in this District found a supporting warrant failed to establish probable cause that evidence of a defendant's narcotics and firearms would be found in the defendant's girlfriend's home. No. 16-cr-316,

7

2017 WL 1534746, at *3 (D. Minn. Mar. 13, 2017), *R. & R. adopted by* 2017 WL 1534745 (D. Minn. Apr. 26, 2017). In *Rios-Uscanga*, an officer had seen the defendant enter and exit the residence and had seen the defendant's vehicle parked at the residence. *Id.* at *2. The residence was also "listed" to a person who had been identified as the defendant's girlfriend. *Id.* Those facts failed to establish a nexus, the court explained, because "[t]here was no assertion or even suggestion in the affidavit that the residence to be searched is Mr. Rios-Uscanga's home. The affidavit did not state that Mr. Rios-Uscanga even stayed occasionally at the home, but only that it is 'listed' to his girlfriend. Ex. A at 61. While the affidavit stated Mr. Rios-Uscanga had been seen entering and exiting the residence, it did not allege that this observation occurred more than once." *Id.*

This case is far closer to *Rios-Uscanga* than *Malone*. The affidavit in *Malone* included several pieces of information corroborating that the defendant stayed at his mother's home, including a witness statement, a police report, several nights of cell phone data, and physical surveillance. The court reasoned that those facts were sufficient to treat the apartment as the defendant's residence. *See Malone*, 2022 WL 2056473, at *6 ("[W[here a warrant affidavit establishes probable cause that a defendant possessed firearms illegally, as this Court concludes it does here, probable cause exists to search what is known to be the defendant's residence[.]"). By contrast, here, as in *Rios-Uscanga*, only one fact meaningfully links the defendant to the residence to be searched. In *Rios-Uscanga* it was physical surveillance. Here, it is Johnson accessing his Facebook account once while in the apartment. As in *Rios-Uscanga*, the affidavit does not state (or suggest) that the Columbia Heights apartment was Johnson's residence, does not state Johnson

stayed occasionally at the apartment, or even that he accessed his Facebook account using Williams's internet more than once.

In short, the affidavit fails to establish probable cause for officers to search the apartment for Johnson's firearms or firearm accessories. The affidavit does not include any specific facts demonstrating Johnson stored firearms at the apartment. Although "when the government has shown probable cause that a defendant illegally possessed a firearm, that showing naturally extends to his residence," *United States v. Huntington*, No. 20-cr-145, 2021 WL 165112, at *2 (D. Minn. Jan. 19, 2021), the affidavit does not establish Johnson treated the apartment like a residence, such that it would be fairly likely Johnson stored a firearm or firearm accessories at the apartment. *See Malone*, 2022 WL 2056473, at *6, At most, the affidavit establishes Johnson's physical presence at the apartment on one occasion and a friendship with the apartment's tenant. Even according "great deference" to the signing judge's determination, that is nowhere near enough to establish probable cause.

### III.     The Good-Faith Exception

The absence of probable cause does not end the suppression inquiry. Under the good-faith exception courts will not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The good-faith exception does not apply in four limited circumstances: (1) when an affiant knowingly or recklessly misled a warrant-issuing judge with false information, (2) when the issuing judge "wholly abandoned his judicial role," (3) when it is "entirely unreasonable" to believe an affidavit creates probable cause for a warrant; and

(4) when a warrant is so "facially deficient"—such as by omitting a particularized place to search or items to seize—that no officer could reasonably presume it is valid. *Id.* at 923.

At issue here is the third circumstance—whether the affidavit is so lacking in indicia of probable cause "as to render official belief in its existence entirely unreasonable." *United States v. Jackson*, 784 F.3d 1227, 1230 (8th Cir. 2015) (citation modified). As the Eighth Circuit has explained, "'[e]ntirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003). For that reason, "it is rare for a search warrant affidavit to be so flawed as to meet this demanding standard[.]" *Rios-Uscanga*, 2017 WL 1534746, at *5. Although a close call, this is one of those rare cases.

As previously explained, the absence of a nexus between the apartment and Johnson is readily apparent. Supra, Part II. The affidavit lacks facts specifically connecting firearm(s) or accessories to the apartment. Instead, the sole premise for the nexus is associational. Indeed, Officer Moore simply states "Johnson is **associated** with this apartment [and therefore this apartment] **could** hold property of Johnson[.]" Search Warrant 5 (emphasis added). The affidavit does not state the apartment was Johnson's residence, does not state Johnson was ever an overnight guest at the apartment (let alone regularly an overnight guest), and offers no representation as to why, in Officer Moore's training and experience, Johnson was likely storing possessions at Williams's apartment. Mere "association" alone is not enough to search a person's home, a location that "enjoys special protection under the Fourth Amendment." *United States v. Herron*, 215 F.3d 812, 814–15 (8th Cir. 2000) (concluding the good-faith exception did not apply

where "the affidavits simply [did] not say very much about Mr. Herron or his residence"). As in *Rios-Uscanga*, "[t]he affidavit's omission of any sort of nexus between the home and the contraband sought is uniquely glaring and cannot be dismissed as a mere technical deficiency." *Rios-Uscanga*, 2017 WL 1534746, at *6 (concluding the good-faith exception did not apply in similar circumstances); *see also United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (concluding the good-faith exception did not apply where "[s]ave for a passing reference to Brown's car registration, the affidavit is devoid of facts connecting the residence to the alleged drug dealing activity"). Therefore, the Court recommends the physical evidence seized during the search of the Columbia Heights apartment be suppressed.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1.  Defendant's Motion to Suppress (Dkt. No. 22) be GRANTED; and

2.  Any physical evidence seized during the February 5 search of the apartment located at 3940 Peter's Place in Columbia Heights Minnesota be SUPPRESSED.

Dated: September 5, 2025          s/ David T. Schultz
                                                       DAVID T. SCHULTZ
                                                       U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).