UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-cr-157 (MJD/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>Kier Shawn Johnson, Jr.,<br>Defendant. | **DEFENDANT'S POSITION REGARDING SENTENCING** |

Defendant Kier Shawn Johnson, Jr., by and through his attorney, Patrick L. Cotter, comes before this Court for sentencing following his plea of guilty to Count 1 of the Indictment, *possession of ammunition as a felon* in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). Pursuant to 18 U.S.C. § 3553(a) and Local Rule 83.10, Mr. Johnson respectfully submits the following position regarding sentencing in this matter.

The parties' disputes and Mr. Johnson's position can be summarized as follows. Pursuant to the plea agreement, the parties believed Mr. Johnson falls into criminal history category III. However, the PSR writer determined that Mr. Johnson falls into category IV because although two offenses were sentenced on the same day, their occurrence was separated by an intervening arrest under USSG § 4A1.2(a)(2). The government now agrees with the PSR writer. Mr. Johnson agrees that the sterile application of the criminal history guideline does apply and the appropriate category is IV, however, he respectfully submits that category III more accurately reflects the nature of his juvenile criminal history.

The parties also differ as to the base offense level: Mr. Johnson's position is that the base offense level is 20 under § 2K2.1(a)(4)(A) because he committed the instant offense after a prior conviction of a crime of violence, but the government's position is that it is 22 under § 2K2.1(a)(3) because in addition to the prior conviction, the court should consider the firearm that was the basis of the dismissed Count 2. Relatedly, the parties differ as to the 2-level enhancement under § 2K2.1(b)(4)(A), which the government argues should apply because the firearm was determined stolen. The parties agree that (1) a 4-level enhancement is appropriate under § 2K2.1(b)(7)(B) because Mr. Johnson used the ammunition in connection with another felony offense and (2) that a 3-level reduction is appropriate for acceptance of responsibility under § 3E1.1. As a result, Mr. Johnson submits that his adjusted offense level is 21, and the government's position is that Mr. Johnson's adjusted offense level is 25.

With a criminal history category of III and adjusted offense level of 21, the guidelines range is 46 to 57 months. Mr. Johnson respectfully requests a sentence of 46 months, the low end of that range. The plea agreement called for the Government to recommend a sentence at the low end of the applicable guideline range. This sentence is sufficient, but no greater than necessary, in light of his personal history, age, motive to reform, and the lengthy presentence jail time he has already served.

## ARGUMENT

When crafting a sentence and considering a motion for a downward variance, "[t]he court shall impose a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). In doing so, the court must examine the nature and

circumstances of the offense, account for the history and characteristics of the offender, and craft an individualized sentence that promotes respect for the law, provides just punishment, provides adequate deterrence, protects the public, and ensures that the offender receives any needed education, vocational training, medical care, or treatment in the most effective manner. *Id.* § 3553(a)(1)-(2). As such, sentencing is not a mechanical process based solely on the sentencing guidelines; rather, it is an individualized assessment that demands consideration of the specific facts before the court. *United States v. Feemster*, 572 F.3d 455, 461-62 (8th Cir. 2009).

The sentencing guidelines are just guidelines and a sentence outside the guidelines is within the discretion of the district court and is not presumed unreasonable. *Id.* at 461-62. "[T]he standards governing departures do not bind a district court when employing its discretion with respect to variances," *United States v. Chase*, 560 F.3d 828, 832 (8th Cir. 2009), and it is error for the district court to treat the guidelines as mandatory, *United States v. Ryder*, 414 F.3d 908, 918 (8th Cir. 2005). The Supreme Court has made clear that sentencing courts *must* go beyond the advisory guidelines and consider the broader factors outlined in § 3553(a) to ensure that each sentence is tailored to the unique circumstances of each case. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). Mitigating circumstances need not be "extraordinary" to justify a downward variance; rather, the district court need only provide an adequate explanation of its reasons demonstrating that it considered the relevant § 3553(a) factors. *Feemster*, 572 F.3d at 462.

## I. The firearm connected to the dismissed Count 2 should not be considered in determining Mr. Johnson's offense level.

In determining a defendant's offense level, courts consider "relevant conduct" under USSG § 1B1.3, which includes the conduct underlying the conviction and, as applicable here, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). The government argues that the base offense level should reflect the possession of the firearm under § 2K2.1(a)(3) and, relatedly, that the 2-level enhancement under § 2K2.1(b)(4)(A) should apply because the firearm was stolen. Mr. Johnson's position is that (1) the government cannot meet its burden to show that Mr. Johnson owned or possessed the firearm and that it was related to the offense of conviction; and (2) the firearm should not be considered under the guidelines amendment 826 because the firearm was suppressed and Count 2 was dismissed.

First, "the Government must prove the factual prerequisites to a sentence enhancement by a preponderance of the evidence." *United States v. Townley*, 929 F.2d 365, 370 (8th Cir. 1991). In this case, the government would have to show that the firearm found at the Peters Place residence in February 2025 belonged to Mr. Johnson and that Mr. Johnson possessed the firearm during, in preparation for, or in the course of attempting to avoid detection or responsibility for possessing the ammunition on December 31, 2024. USSG § 1B1.3(a)(1). The government does not have sufficient evidence to show that

Mr. Johnson possessed the firearm, and the evidence affirmatively shows that the firearm, a Glock with the slide and barrel of a .40 caliber Model 27, could not have been used to discharge the 10-millimeter ammunition he was convicted of possessing. *See* Sporting Arms & Ammunition Manufacturers' Institute, Inc., *ANSI/SAAMI Z299.3-2022, Voluntary Industry Performance Standards for Pressure and Velocity of Centerfire Pistol and Revolver Ammunition*, Cartridge and Chamber Drawing: 10mm Automatic, p. 27; Cartridge and Chamber Drawing: .40 Smith & Wesson, p. 43. The government provides no alternative theories connecting the firearm to the ammunition. Therefore, the firearm is not related to the offense of conviction and should not be used to determine the base offense level or apply the stolen-firearm enhancement.

Second, section 3553(a)(5) calls for the district court to consider "any pertinent policy statement issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5). Effective November 2024, the commission amended § 1B1.3 to add that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." USSG § 1B1.3(c).[1] In doing so, the commission explained that the amendment "seeks to promote respect for the law" in light of robust criticism of considering acquitted conduct at sentencing. U.S. Sentencing Comm'n, Guidelines Manual, app. C, amend. 826 (effective

[1] The exception in the last clause does not apply here because possession of the firearm does not establish any part of the offense of conviction.

Nov. 1, 2024). Mr. Johnson acknowledges the precedent cited by the government stating that suppressed evidence may be considered at sentencing, but submits that the 2024 amendment expresses a policy that the Court should consider in exercising its ultimate discretion.

In support of amendment 826, the commission cited justices and judges' serious concerns that the practice of considering acquitted conduct diminishes "the public's perception that justice is being done, a concern that is vital to the legitimacy of the criminal justice system." *McClinton v. United States*, 143 S. Ct. 2400, 2402-03 (2023) (Sotomayor, J., Statement respecting the denial of certiorari); *see also United States v. Settles*, 530 F.3d 920, 924 (D.C. Cir. 2008) (expressing concern that "using acquitted conduct to increase a defendant's sentence undermines respect for the law and the jury system"). Other judges and justices have opined that the practice undermines the Sixth Amendment, commenting that even if a defendant is acquitted, they still "face all the risks of conviction, with no practical upside to acquittal unless they . . . are absolved of all charges.'" *United States v. Bell*, 808 F.3d 926, 932 (D.C. Cir. 2015) (Millett, J., concurring in the denial of reh'g en banc). In his concurrence, Justice Kavanaugh encouraged district court judges to use their authority to grant downward variances "to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct." *Id.* at 928 (Kavanaugh, J., concurring in the denial of reh'g en banc).

Regardless of whether the firearm is considered "acquitted conduct" under the new text of the guidelines, the reasoning applies equally to support a variance. In addition to the Sixth Amendment concerns expressed above, considering the suppressed firearm

undermines the Fourth Amendment. Mr. Johnson exercised his right to challenge the constitutionality of the warrant that resulted in discovery of the firearm. Using the firearm to determine his base offense level under § 2K2.1(a)(3) and further enhance it under § 2K2.1(b)(4)(A) would be inconsistent with the Court's determination that the firearm was discovered in violation of the constitution.

## II. Mr. Johnson's requested sentence is appropriate based on his personal history and characteristics.

### A. Mr. Johnson's age at the time of his current and prior offenses is a mitigating circumstance supporting his requested sentence.

A defendant's youth at the time of committing an offense can be considered a mitigating circumstance under § 3553(a), including as it relates to the significance of a defendant's criminal history. *United States v. Feemster*, 572 F.3d 455, 463 (8th Cir. 2009); *Gall v. United States*, 552 U.S. 38, 58 (2007). The Supreme Court has recognized that youth is an important factor in sentencing:

> "First, children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking. Second, children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' "

*Miller v. Alabama,* 567 U.S. 460, 471 (2012) (quoting *Roper v. Simmons,* 543 U.S. 551, 569-70 (2005)). As illustrated by the PSR, the concerns expressed in *Miller* and *Roper* ring true in Mr. Johnson's case. He has encountered significant trauma and instability in his

young life, culminating in an ACE score of 6 out of 10. PSR ¶ 61. From a very young age, he experienced financial, housing, and food instability in the care of his single mother and was exposed to violence, poverty, street gangs, gun culture, and addiction. PSR ¶ 48. His father was often incarcerated and the two have only met a handful of times. PSR ¶ 47. These circumstances led to controlled substance use as early as age 9 and involvement with gangs shortly thereafter, which in turn led to Mr. Johnson's involvement with the criminal justice system beginning at just 15 years old and a diagnosis of PTSD from childhood trauma and the tragedies he has witnessed. PSR ¶¶ 50, 57, 63. Simply put, Mr. Johnson's conduct is a product of his environment and underdeveloped judgment.

Mr. Johnson will be 23 years old at sentencing. By sentencing, he will have been incarcerated at the Sherburne County Jail for over a year and a half and, if granted his requested sentence of 46 months, will be over 25 years old when he is released from prison. By then, his frontal lobe will be fully developed and he will have taken advantage of the myriad opportunities for growth and rehabilitation available in prison. A longer sentence will not make any appreciable difference to his risk of recidivism and would be greater than necessary to achieve the goals of sentencing.

Relatedly, the reasoning above applies even more acutely to Mr. Johnson's age at the time of previous offenses and the intervening arrest that placed him in criminal history category IV rather than III, supporting a variance. In addition to the Supreme Court's comments cited above, the sentencing commission has long recognized that traditional downward departures "may be warranted" if there is "reliable information" indicating "that the defendant's criminal history category substantially over-represents the seriousness of

the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(b)(1) (2024).[2] Courts have done so as well. *Feemster*, 572 F.3d at 463; *United States v. Greene*, No. 2:05CR67-WHA, 2014 WL 345410, at *3 (M.D. Ala. Jan. 30, 2014) (varying downward from the career-offender guideline because the defendant's status was "based in part on actions he took when he was 16 years old"). Here, Mr. Johnson incurred three criminal-history points each for an offense he committed when he was 16 and another when he was 17. *See* PSR ¶ 37. Although these were sentenced on the same day, they each incurred points because of an intervening arrest under USSG § 4A1.2(a)(2). This intervening arrest was undoubtedly a product of Mr. Johnson's lack of judgment and immature regard for the law as a juvenile. Mr. Johnson respectfully submits that although § 4A1.2(a)(2) is correctly applied to arrive at a criminal history category of IV, the resulting score overstates the criminality of his juvenile conduct. Mr. Johnson's requested sentence of 46 months is consistent with treating these two sentences as one.

[2] Although this provision was deleted in 2025 via Amendment 836, the commission did so only as part of a broader structural amendment that deleted most departure provisions and simplified sentencing from a three-step process (considering the guidelines range first, departures second, and variances third) to a two-step process (using the guidelines range as a "starting point and initial benchmark" first and applying § 3553(a) second). U.S. Sentencing Comm'n, Guidelines Manual, app. C, amend. 836 (effective Nov. 1, 2025). The commission stated that the amendment was "outcome neutral" and "does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative and does not serve as a limit to the information courts may consider in imposing a sentence."

**B. Mr. Johnson's requested sentence is appropriate based on his family history and status as a new father.**

Next, scholars have observed that having an incarcerated parent is traumatic and can delay emotional and mental development, lead to long-lasting mental health issues, negatively affect school performance, lower the child's self-esteem, lead to economic hardship, and even lead to termination of parental rights. Emily W. Andersen, Note, *"Not Ordinarily Relevant": Bringing Family Responsibilities to the Federal Sentencing Table*, 56 B.C. L. REV. 1501, 1518 (2015); Sarah Abramowicz, *Rethinking Parental Incarceration*, 82 U. COLO. L. REV. 793, 812 (2011). These negative effects disproportionately impact children of color and are most profound when children are young. *Id.* at 812; Andersen, 56 B.C. L. REV. at 1520.

Here, Mr. Johnson's father was often incarcerated and as a result, his single mother was regularly away from the home working to provide for Mr. Johnson and his siblings while they cared for each other without parental figures. PSR ¶¶47-49. As the scholarship and facts of this case demonstrate, the lack of support and resources Mr. Johnson needed from his parents unquestionably affected his life trajectory.

Now, Mr. Johnson is a father himself. Courts have recognized—before and after *Gall* and *Booker*—that family ties should be considered in crafting a sentence under § 3553(a) despite the guidelines' stance that family responsibilities are "not ordinarily relevant." *See, e.g.*, *United States v. Wadena*, 470 F.3d 735, 740 (8th Cir. 2006) (affirming non-prison sentence based in part on the defendant's role as a caregiver); *United States v. Rhodes*, 410 Fed. Appx. 856, 865 (6th Cir. 2010) (reversing sentence when the district

court failed to consider support for the defendant's daughter); *United States v. Husein*, 478 F.3d 318, 331 (6th Cir. 2007) (affirming non-prison sentence where the district court reasoned that "your family is going to benefit more by your presence than society is going to benefit from your incarceration"); *United States v. Gauvin*, 173 F.3d 798, 808 (10th Cir. 1999) (affirming downward departure based on family responsibilities even when defendant was not the only parent and had a history of domestic abuse).

Another district court in this circuit aptly recognized that "there is compelling scholarship that demonstrates the need for courts to consider a defendant's family circumstances at sentencing," and based on a thorough examination, concluded that "[c]hildren of defendants are as much stakeholders in a sentence as the victims, the public, and the defendants themselves." *United States v. Cox*, 271 F. Supp. 3d. 1085, 1088, 1089-90 (S.D. Iowa 2017).

Mr. Johnson wants to be involved in his child's life, which the child's mother supports. PSR ¶ 51. He has demonstrated this ability by caring for the mother's other young child. *Id.* To that end, Mr. Johnson is motivated to use his time in prison to rehabilitate himself and provide a better example than was set for him. A greater sentence would only further perpetuate a harmful cycle Mr. Johnson is motivated to break so his child can have a better life than what was afforded to him.

## III. Mr. Johnson's requested sentence is sufficient, but no greater than necessary, to achieve the goals of sentencing.

Every sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal

conduct; to protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Mr. Johnson's requested sentence of 46 months is sufficient, but no greater than necessary, to achieve these goals. This length of time will not be any less effective than a longer sentence to punish and deter future criminal conduct. Of note, Mr. Johnson's sentence should account for the significant time he has been incarcerated in the Sherburne County Jail. Mr. Johnson has been incarcerated in Sherburne County since April 28, 2025, pending sentencing in this matter. When considering a motion for a downward variance, district courts have discretion to consider the length and nature of time spent in custody. *United States v. McFarlane*, 478 F.Supp.3d 125, 127 (D. Mass. 2020). The Sherburne County Jail is poorly equipped for long-term incarceration, lacking appropriate programming to address inmates' mental health, substance use, and other rehabilitative concerns. By sentencing, Mr. Johnson will have spent over a year and a half doing hard time at the jail, and his federal sentence should account for the harsh conditions and length of pre-sentence detention as it relates to the need for just punishment, adequate deterrence, and to promote respect for the law.

With regard to rehabilitation, Mr. Johnson's sentence in this matter is unlike previous sentences he has served. As his first federal sentence, Mr. Johnson will have access to resources he has not previously been afforded to efficiently address behavioral concerns and provide needed educational and vocational training. Mr. Johnson has demonstrated his motivation to get on the right path by taking courses through NCIC at the Sherburne County Jail, and will continue on the path to rehabilitation to ensure he has the

tools to be a contributing, law-abiding member of society upon release. He has cut ties with the gang he was associated with in his youth, and prison will allow him to maintain distance from that life. He will grow into an adult during the current sentence and will be a new person with a new perspective on life when he is released.

In sum, it is not difficult to understand why Mr. Johnson finds himself in the position he is in today. However, his story does not end there. He has the motivation to work like never before to break harmful cycles and get on the right path, and his requested sentence of 46 months will be sufficient, but no greater than necessary, to achieve the goals of sentencing.

## **CONCLUSION**

For the foregoing reasons, Defendant Kier Shawn Johnson, Jr. respectfully requests that the Court grant his motions in their entirety.

Respectfully submitted,

Dated: July 2, 2026

*/s/Patrick L. Cotter*

Patrick L. Cotter
Attorney No. 0319120
Attorney for Defendant
105 Hardman Court, Suite 110
South St. Paul, MN 55075
Phone: (651)-455-1555
Fax: (651) 455-9055
patrick@siebencotterlaw.com