UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-157 (MJD/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KIER SHAWN JOHNSON, JR.,<br><br>Defendant. | ) | **POSITION OF THE UNITED STATES REGARDING SENTENCING** |

The United States of America, by and through its undersigned attorneys, hereby submits its position regarding sentencing in this matter.

Consistent with the plea agreement entered into by the parties, the United States asks the Court to sentence the defendant, Kier Shawn Johnson, Jr., to a term of imprisonment at the low end of the Guidelines range as determined by the Court. After sustaining multiple felony convictions, the defendant possessed 10-millimeter ammunition. On New Year's Eve at a residential intersection in St. Paul, the defendant fired at least 13 rounds of ammunition at an occupied vehicle before leaving the scene. One bullet traveled through a window and hit the headrest of a piece of furniture in a nearby home. The residence was occupied at the time of the incident, but thankfully no one was injured in the shooting. A low-end Guidelines sentence is reasonable and appropriate under the sentencing objectives of United States law.

## I. Factual Background

On the morning of New Year's Eve in 2024, the defendant was riding in the passenger seat of a green Ford Taurus driven by Noah Eskridge. The two stopped at a tobacco shop and encountered individuals in another vehicle. Soon thereafter, the two vehicles were at the same residential intersection in St. Paul. There, the defendant fired at least 13 shots towards the other, occupied vehicle. One of the bullets broke through a window and hit the headrest of unoccupied furniture in an otherwise occupied residence.





St. Paul police quickly responded and investigated. Among other things, police gathered surveillance video and social media content. By the end of January, both the defendant and Mr. Eskridge were charged with "dangerous weapons – drive by shooting toward occupied motor vehicle or building."

On February 5, 2025, St. Paul police officers prepared to arrest the defendant. They stopped him at a gas station and placed him under arrest. That same day, officers sought a search warrant for an apartment on Peters Place in Columbia Heights where the defendant was staying. There, they recovered a Glock firearm in the top drawer of a bedroom dresser. The Glock was affixed with auto-sear, had a 22-round extended magazine, and had been reported stolen.



Police officers spoke with the female renter of the apartment and learned that the firearm did not belong to her. Some items of the defendant's clothing were also recovered from the apartment. The firearm was subsequently tested for DNA. The defendant was determined to be a possible contributor to the mixture recovered from the slide serrations, levers, and magazine release of the firearm.

## II. The Presentence Investigation Report.

### A. The Government's Position.

The United States agrees with the facts set forth in the PSR. The United States objects to the exclusion of the firearm recovered from the Peters Place from the Guidelines calculations. (PSR at A.1-A.2.) The United States intends

to prove that there is sufficient indicia of reliability of the defendant's possession of the Glock firearm. Accordingly, the United States submits that the defendant's possession of the firearm should be considered at sentencing as relevant conduct pursuant to 18 U.S.C. § 3661, U.S.S.G. §§ 1B1.3(a), 6A1.3, and *United States v. Tauil-Hernandez*, 88 F.3d 576, 580–81 (8th Cir. 1996).

The United States believes that the base offense level is 22 because the defendant possessed a firearm—the firearm recovered from Peters Place—that was capable of accepting a large capacity magazine and a machinegun as enumerated in 26 U.S.C. § 5845(a)(6), subsequent to sustaining a felony conviction for Second-Degree Aggravated Assault. U.S.S.G. § 2K2.1(a)(3). Because that firearm had been stolen, a two-level increase applies. U.S.S.G. § 2K2.1(b)(4)(A). The defendant admitted and agrees that the offense level should be increased by 4 levels because he used or possessed ammunition in connection with a drive-by shooting toward an occupied motor vehicle or building, which is another felony offense. U.S.S.G. § 2K2.1(b)(7)(B). With credit for acceptance of responsibility, the total offense level is 25. U.S.S.G. § 3E1.1.

The defendant accumulated eight criminal history points for three of his prior felony convictions: two instances of second-degree assault and ineligible possession of a firearm. (PSR ¶¶ 33, 37-39.) Because the defendant committed the instant offense while on supervised release for possessing a firearm as a felon, and has otherwise received seven criminal history points, he receives one

additional criminal history point. (PSR ¶ 40.) With 9 criminal history points, the defendant falls into criminal history category IV. (PSR ¶ 41.) The resulting Guideline range is 84-105 months' imprisonment. (PSR at A.2.)

### B. The Defendant's Objection.

The defendant objects to the inclusion of allegations from January 23-24, 2025, in paragraph 29 of the PSR. (PSR at A.2-A.3). The defendant denies involvement in those incidents and argues that they do not constitute relevant conduct. (*Id.*) The United States agrees with the response set forth in the Addendum. The Court may consider any information concerning the background, character, and conduct of the defendant at sentencing. Moreover, those allegations have no impact on the Guidelines calculations.

## III. <u>The Appropriate Sentence.</u>

### A. The Firearm Charged in Count 2 Should Be Considered by This Court at Sentencing.

The United States charged the defendant with possessing a Glock firearm on February 5, 2025, in Count 2 of the Indictment. (ECF No. 1 at 2.) This Court suppressed that firearm, as well as the rest of the physical evidence seized during the search of the Peters Place apartment in Columbia Heights. (ECF No. 32.)

Nevertheless, the Government believes that the offense conduct and underlying evidence, including the Glock firearm, charged in Count 2 of the

Indictment and described in paragraph 30 of the PSR should be considered when determining the applicable Guidelines and the appropriate sentence. 18 U.S.C. § 3661 requires that "[n]o limitation shall be placed on the information concerning the . . . conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." U.S.S.G. § 6A1.3(a) states: "In resolving any dispute concerning a fact important to the sentencing determination, the court may consider *relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability* to support its probable accuracy." (emphasis added). The Eighth Circuit has determined:

> Extending the exclusionary rule to sentencing would have a detrimental effect on the traditional judicial prerogative of sentencing an offender based upon all the relevant and reliable information that is available. . . . More significantly, whatever increased deterrence might result from this extension of the exclusionary rule does not, in our view, outweigh the cost of truncating the sentencing judge's traditionally broad inquiry into all that may be relevant and reliable in determining the convicted defendant's appropriate punishment. . . . We therefore agree with the other circuits that a sentencing court may properly consider suppressed evidence in determining a Guidelines sentence.

*Tauil-Hernandez*, 88 F.3d at 581; *see also United States v. Dabney*, 42 F.4th 984, 989 (8th Cir. 2022) ("[T]he exclusionary rule doesn't apply at sentencing[.]" (citing *Tauil-Hernandez*, 88 F.3d at 581)). Accordingly, despite the fact that the firearm was suppressed, this Court should consider the

firearm in connection with determining the applicable Guidelines and the appropriate sentence.

Both the PSR addendum (PSR at A.1-A.2) and the defendant (ECF No. 47 at 4-7) argue that the suppressed conduct should not be considered at sentencing because Amendment 826 to the U.S. Sentencing Guidelines recently inserted a new subsection stating: "Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c). It is the Government's position that this argument misses the mark. The amendment addresses acquitted conduct alone, not suppressed evidence. To be clear, the defendant was not acquitted of possessing the Glock firearm in federal court—rather, the facts included in the search warrant affidavit did not provide a sufficient nexus to the Peters Place apartment. (*See* ECF Nos. 31-32.) Regardless, the *Tauil-Hernandez* case, on the other hand, specifically addressed suppressed evidence and determined that such evidence may properly be considered to determine the Guidelines sentence.

The United States intends to prove that there is sufficient indicia of reliability of the defendant's possession of the Glock firearm. The statements from the renter of the apartment about the recovered firearm, the defendant's clothing being recovered from the apartment, and the determination that the

defendant is a possible contributor to the DNA mixture recovered from the firearm and magazine, collectively establish sufficient indicia of reliability of the defendant's possession of the Glock firearm. Accordingly, the United States submits that the defendant's possession of the firearm should be considered at sentencing as relevant conduct.

### B. The Requested Sentence Is Appropriate.

In addition to determining the defendant's Sentencing Guidelines range as required by 18 U.S.C. § 3553(a)(4), this Court must assess the other applicable sentencing factors under § 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Based upon a balance of these factors, and consistent with its obligations under the plea agreement, the United States asks the Court to sentence the defendant to a term of imprisonment at the low end of the Guidelines range as determined by the Court.

### 1. The Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Both Reflect the Seriousness of, and Provide Just Punishment for, the Offense.

The circumstances of the defendant's crime are serious and merit a commensurate sentence.

As the Supreme Court observed, in enacting the felon-in-possession statute: "Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). Congress therefore prohibited the possession of firearms and ammunition by felons, seeking to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small v. United States*, 544 U.S. 385, 393 (2005) (internal quotation marks omitted). That threat is not only theoretical in the defendant's case; the defendant has a proven capacity for violence. The defendant possessed the ammunition in connection with a drive-by shooting where he fired at an occupied vehicle and one of his shots actually struck the furniture in an occupied residence. Moreover, the defendant possessed the ammunition after two instances of second-degree assault: he shot at an opposing street gang and exchanged gunfire in a parking lot near Allianz Field both in 2019. (PSR ¶¶ 33, 37.) Since then, he illegally possessed another

firearm and ammunition. (PSR ¶ 38.)

Accordingly, the defendant knew full well that he was prohibited from possessing firearms and ammunition because he has four prior felony convictions, including a prior conviction for possessing a firearm as a felon. (PSR ¶ 37-38.) In fact, at the time of the instant offense, he had just served a 60-month sentence for that firearm conviction and remained on supervised release. (PSR ¶¶ 38, 40.)

The defendant quickly returned to possessing a firearm and ammunition—and using them to shoot at others, even in a residential area. (PSR ¶¶ 10-11.) Then, most recently, on February 5, 2025, he possessed a firearm equipped with a switch and loaded with a 22-round extended magazine. The defendant's conduct reflects a disregard for the law and an insistence upon arming himself and engaging in gun violence despite being prohibited.

A low-end Guidelines sentence is necessary to reflect the seriousness of this offense, and to provide just punishment.

**2. The History and Characteristics of the Defendant, and the Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.**

A low-end Guidelines sentence is also necessary to deter the defendant and to protect the public from him.

The defendant's conduct in this case follows on a violent criminal history. In September of 2019, the defendant was with a group of males walking to the light rail station when they encountered another group of males and heard someone say "East side." (PSR ¶ 33.) The defendant was a member of the 600 street gang. (*Id.*) The defendant saw people with their hands in their pockets so he shot towards the group 3-4 times. (*Id.*) They returned fire and shot the defendant in the leg. (*Id.*)

In October 2019, the defendant was in a parking lot near Allianz Field. (PSR ¶ 37.) He positioned himself behind a vehicle and then brandished and discharged a firearm at two males riding their bicycles past him. (*Id.*) One of the bicyclists returned fire approximately six times. (*Id.*) Law enforcement officers were stationed at Allianz Field for a soccer game and assisted two people with resulting gunshot wounds—one victim had wounds in his arm and head, and the other sustained a wound to his back. (*Id.*) Another individual in the parking lot informed police that her vehicle was struck by a bullet—the bullet broke the glass of her rear passenger door and almost struck an occupant in a car seat. (*Id.*)

The following year, the defendant left his home with a firearm and ammunition on his person. (PSR ¶ 38.) After serving his 60-month prison sentence for possessing a firearm as a felon, the defendant began supervised

release on March 18, 2024. (*Id.*) Before the end of the year, the defendant committed the instant offense. (PSR ¶ 10.)

The United States recognizes that the defendant has faced significant challenges in his life. His father was incarcerated for drug dealing throughout the defendant's upbringing, beginning when the defendant was about two years old. (PSR ¶ 47.) He endured financial and food insecurity as well as unstable housing. (PSR ¶ 48.) He has experienced the loss of relatives and friends due to violence. (PSR ¶ 50.) He was exposed to crime and violence as well as controlled substances throughout the communities of his upbringing, and incorporated those into his lifestyle. (PSR ¶ 92.) These challenges no doubt inform much of the defendant's issues with criminal behavior.

However, the difficult fact remains that the defendant has proven either unwilling or unable to cease criminal conduct. Despite prior felony convictions related to firearms and shootings, he continues to return to the same kind of dangerous behavior. He continues to possess and discharge firearms and ammunition regardless of the presence, or potential presence, of innocent bystanders. Additionally, the danger he poses continues to escalate, as he most recently possessed a firearm equipped with an auto-sear and 22-round extended magazine. Throughout the defendant's criminal history, the longest sentence imposed on him was 60 months. (PSR ¶ 38.) A significant sentence is therefore necessary to deter the defendant and to protect the public from his

dangerous behavior. A significant sentence will also ensure the safety of the community and the defendant's own rehabilitation for a meaningful amount of time. Moreover, such a sentence would reflect the gravity of the harm gun violence causes in our communities.

## CONCLUSION

In light of all the facts in this case, and pursuant to the sentencing objectives of 18 U.S.C. § 3553(a), the United States asks this Court to sentence the defendant to a term of imprisonment at the low end of the Guidelines range as determined by the Court.

Dated: August 12, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Mary S. Riverso*

BY: MARY S. RIVERSO
Assistant United States Attorney